HATCHER & BALDWIN vs. COMER & COMPANY.

Suit was brought on a note and on a balance alleged to be due on an account. The defendants denied indebtedness, and pleaded payment of the note and recoupment for damages alleged to have been sustained by reason of the violation on the part of the plaintiffs of instructions as to the sale of certain cotton. The evidence made it clear that forty-five bales of cotton were sent by the defendants to the plaintiffs and ordered to be sold, and that the amount of the sale was directed to be applied to the satisfaction and payment of the note; and from the entire course of dealings between the parties, it was evident that these instructions were carried out and that the proceeds of the sale were thus applied. The sale brought more than enough to pay this particular indebtedness:

*Held,* that a verdict for the plaintiffs for the entire amount was contrary to law and evidence.

(*a.*) Right to direct appropriation of payments, and application where no direction, discussed.

(*b.*) Neither bank checks nor promissory notes are, as a general rule, deemed a payment until they are themselves paid. But they might be considered payment if the parties so understood and agreed; and *a fortiori*, without such an understanding. agreement or direction, a promissory note would not be converted into an indebtedness by account, by a simple transfer or memorandum of such note made on the books of the creditor.

November 3, 1885.

Debtor and Creditor. Payment. Factors. Promissory Notes. Before Judge FORT. Macon Superior Court. May Term, 1885.

Reported in the decision.

S. B. HATCHER; E. G. SIMMONS, for plaintiffs in error.

DENMARK & ADAMS; HAWKINS & HAWKINS, for defendants.

HALL, Justice.

On the 10th of October, 1878, the defendants were indebted to plaintiffs both by note and open account. The note was for the sum of $1,038 $\frac{90}{100}$, and fell due on the 15th day of that month, and allowing days of grace, it became presentable for payment on the 18th of the same month; it bore interest at the rate of 10 per cent. On the day first named, the plaintiffs by letter notified defendants of the amount of this note and of its approaching maturity. On the 17th of the month, the defendants replied to this notification, informing plaintiffs that they would ship them cotton and saying to them, " out of proceeds you can pay our note." This letter reached its destination by due course of mail, and on the 18th, a reply was forwarded, and the defendants were then informed that their note due that day was charged to their account. The cotton was not shipped until the 26th day of the month, and a letter giving

notice of the shipment was forwarded at the same time, and plaintiffs were requested to sample and place it upon the market and oblige defendants by letting them know what it brought. In response to this, by letter dated the 28th, the plaintiffs acknowledged the receipt of the letter, informing them of the shipment of 45 bales of cotton, assuring defendants that their "instructions" in relation thereto were "noted" and would be "obeyed." The extract from the plaintiffs' ledger showed that the note had been carried to defendants' account on the 18th, and thereafter that interest had, at stated times, been regularly charged up on it; this item was likewise placed on the account. The plaintiffs had an account against the defendants which was running when this note fell due, and which continued for some time thereafter. The defendants repeatedly acknowledged, both by letter and verbally, their indebtedness to plaintiffs for balance due on account, which they, at various times and in various ways, promised to pay, but which they did not pay. On the 17th day of February, 1881, suit was commenced on the note, and upon a balance of $78$\frac{3}{100}$ alleged to be due on the account, which, according to the bill of particulars annexed to the declaration, seems to have been closed on the 24th of February, 1879. To this action the defence set up was a denial of indebtedness as alleged, payment of the note, and recoupment for certain damages which the defendants claimed they had sustained by reason of the failure of plaintiffs to obey their directions as to the sale of some 86 bales of cotton forwarded to them. The case was twice tried, and on each trial the plaintiffs had a verdict for the full amount of their demands. The first verdict was set aside by this court, in consequence of the refusal of the judge of the superior court to charge certain written requests made by defendants' counsel, which we thought should have been given. (See decision rendered at September term, 1884).* On the last trial, both Hatcher and Baldwin swore positively to

* 73 *Ga.*, 418.

the payment of the note sued on; and neither this testimony nor that afforded by the correspondence between the parties as hereinbefore detailed, or by extracts from the plaintiffs' book, called forth by notices served on them, was contradicted or seriously shaken by any witness who testified. Comer was on the stand at this trial, and swore that Hatcher had repeatedly promised to pay the entire account claimed by his firm. When questioned further as to what that was shown by, he replied, " It was shown by the account. Defendants always promised to pay it, and offered to give us a note if we would wait until fall." McKennon, the clerk and agent of plaintiffs, swore that he presented the account, and they promised to pay it. This was the only note given by defendants to plaintiffs, and after the sale of the forty-five bales of cotton sent by them to meet it, there is not one particle of proof, written or oral, which tends to show that they ever promised to pay it, or that they ever acknowledged any liability whatever on account thereof.

The defendants moved for a new trial, on various grounds, and among them, because the verdict was contrary to law and evidence and was without evidence to support it. This motion was denied, and the verdict was allowed to stand, and this is the judgment now complained of.

1. It is unnecessary to consider any other grounds than these, as we are satisfied that a different verdict from that found was imperatively demanded by the law and the evidence. It is clear, beyond question, that the forty-five bales of cotton were sent and ordered to be sold, and the amount of the sale was directed to be applied to the satisfaction and payment of the note; and from the entire course of dealings between these parties, it is equally evident that these instructions were carried out, and that the proceeds of the sale were thus applied; that the sale brought more than enough to satisfy this particular indebtedness is not denied; indeed, it would seem that it brought a sufficient amount to extinguish all the indebtedness of

defendants up to that date. The defendants had a right to direct the appropriation of this payment to either of the several debts held by the plaintiffs against them, and the plaintiffs recognized their right to do so by complying with their direction. Had they given no such direction, however, the plaintiffs might have appropriated it at their election, and in the event they failed to exercise this privilege, the law then would have made the application in such manner as was reasonable and equitable to both parties, generally so applying it as to extinguish the oldest security or the oldest item in the account, as the legal presumption is that such would have been the fair intention of the parties. Code, §2869, and citations.

Under the proof, it is not necessary to discuss the numerous points presented to avoid the conclusion at which we have arrived.

This decision does not lead to the absurd result, as was insisted on the argument, that the transfer of the note to the defendants' account *ipso facto* extinguished the note or changed its character from a written promise to an indebtedness by open account. We are well aware that neither bank checks nor promissory notes are, as a general rule, deemed a payment until they are themselves paid (Code, §2867), but we are not prepared to hold that they would not be considered payment if the parties so understood and agreed; and *a fortiori*, without such understanding, agreement or direction, a promissory note would not be converted into an indebtedness by account by a simple transfer or memorandum made on the books of the plaintiffs. Resort was had to these books for no such purpose, but as affording some evidence that the plaintiffs regarded the contract in reference to the note to be as was insisted on by the defendants.

There is not the slightest evidence that the defendants ever ratified the plaintiffs' dealings with the note subsequently to the time they ordered it paid, or that they ever recognized it as outstanding and obligatory upon

them; nor are we authorized to infer that they yielded to the claim now set up by plaintiffs, that they had a right to control the time of selling the cotton and appropriating the proceeds thereof because of liabilities they had incurred for defendants and moneys advanced by them to meet such liabilities. That such would have been the case, in the absence of instructions to the contrary, on which they acted, is not questioned; but after complying with such directions, it is too late, without the consent of the defendants, to resort to rights that once existed, but which were converted into those of a different character by their agreement.

Had this suit been brought upon this entire account, with the note still constituting an item of the same, the result might have been very different from that which we think the law compels. It may be true that an amendment of the declaration conforming to these views would enable the plaintiffs to recover, but we do not decide this, leaving them to exercise their own discretion in the matter, and leaving the defendants free to set up any defence to the maintenance of such a suit as they may be advised they have. All that we now determine is, that the action, in its present form, cannot be sustained against the defence that has been made. As this disposes of the case, it is unnecessary to consider other questions made by the record.

Judgment reversed.