27709. RUBIN & CHERRY EXPOSITION INC. *v.* BRAY, next friend, etc.

DECIDED DECEMBER 5, 1939.

*George C. Palmer,* for plaintiff in error.
*McGee & Elliott,* contra.

BROYLES, C. J. ■ This was an action for damages based on an assault and battery alleged to have been committed upon the person of Lila Bray, a twelve-year-old girl, by an employee of the defendant. The original petition (formal parts omitted) reads as follows: "The petition of Harry Bray, as next friend of Lila Bray, a minor, . . shows the following facts: (1) That Rubin & Cherry Exposition Inc., defendant herein, is indebted to plaintiff in the amount of $2500 by reason of the facts hereinafter alleged. (2) Rubin & Cherry Exposition Inc. is a foreign corporation engaged in the business of owning and operating carnivals, exposi-

tions, midway shows, and the like. (3) During the week of· October 17, 1937, defendant did own and operate at the fair grounds in the City of Columbus, Georgia, a carnival and a number of midway shows, and did invite the general public to attend the same. (4) That on the evening of October 21, 1937, Lila Bray, a minor, aged twelve, in company with her mother and father and friends, did visit the carnival and shows of the defendant, the same being designated as 'School or Children's Day' by the defendant and the officials of the Chattahoochee Valley Exposition, which was also in progress on said date in the City of Columbus. (5) That on said date and as a part of said carnival there was located on the midway a show known and designated as 'Honeymoon Hotel,' the same being owned and operated by the defendant as a part of the carnival so maintained. (6) The said Lila Bray on said date did purchase a ticket entitling her to be admitted to said 'Honeymoon Hotel' show, for which ticket she paid the sum of ten cents, said ticket being sold to her by an agent, an employee of the defendant, stationed immediately in front of the entrance to said show, said employee offering tickets for sale to the public, the name of said employee being unknown to the plaintiff but well known to the defendant. (7) Lila Bray surrendered said ticket to the ticket taker, another employee of the defendant, at the entrance to said show, and entered therein for the purpose of seeing said show. (8) That said 'Honeymoon Hotel' show was composed of a series of dark passages in which were placed numerous obstacles and devices such as collapsible stairways, sudden slides, and strong blasts of air supposedly designed for the purpose of providing a thrill for the unsuspecting. (9) Said contrivances were so designed at one point to require the visitor to climb a stairway, at the top of which was stationed a collapsible chair facing the chute leading down a dark passageway, and the visitor being expected to sit in said chair until an attendant stationed at said point by the defendant suddenly throws a lever producing the collapse of the chair and catapulting the visitor down the dark chute. (10) That when the said Lila Bray reached this point in passing through said show she became afraid of this contrivance and sought to turn back to the entrance whence she came. When the attendant saw her turn back he caught her by the arm and told her it would be necessary for her to go down the chute. She stated to the attend-

234 ant that she was afraid of the contrivance, expressed a desire to

234

ant that she was afraid of the contrivance, expressed a desire to go back to the entrance or that she be allowed to avoid going down said chute, and demanded that said attendant release her. Said attendant pushed her toward the chair and stated that she would have to go down. She began to cry and call her father, who was waiting outside of said show, whereupon said attendant did strike the said Lila Bray a severe blow with his open palm on the left side of her face, and did rudely and forcibly push her down said chute against her will and over her protestations. Her father and others hearing her screams did immediately come to her assistance, and said attendant immediately fled from the scene, being apprehended in hiding by the police approximately thirty minutes later. (11) The said attendant above referred to was one Richard A. Jones, alias Claude Edward Gay, and was, at the time of the occurrence above described and at the time of committing said acts, an agent and employee of the defendant herein under defendant's supervision and direction and in defendant's employ. (12) Plaintiff shows that said acts of striking and pushing the said Lila Bray resulted in great physical pain to her, producing whelps and bruises on her face and arms. (13) Plaintiff further shows that said acts on the part of the defendant produced in said Lila Bray an aggravated state of fright, severe shock, and consequent mental suffering caused by the violent injury to her feelings and sensibilities and the ensuing humiliation and embarrassment. (14) Plaintiff alleges that because of the injuries so sustained, as above described, defendant did endamage the said Lila Bray in the sum of $2000, which amount plaintiff seeks to recover of the defendant. (15) Plaintiff alleges that the acts of said defendant as above described were wanton, malicious, and wilful, and that said assault and battery was entirely without justification or excuse, by reason of which fact plaintiff is entitled to recover of the defendant an additional sum of $500 as punitive damages to deter the defendant from repeating the trespass." The remaining paragraph of the petition, for the purpose of a decision of this case, is immaterial and is omitted.

On November 22, 1938, the case came on for trial, and the special demurrer to an amendment to the petition filed November 18, 1938, was overruled and to that judgment exception was taken. The amendment was as follows: "Plaintiff amends paragraph 11 of

the original petition by striking said paragraph in its entirety and substituting therefor the following, to be numbered as paragraph 11: 'The said attendant above referred to was one Richard A. Jones, alias Claude Edward Gay, and said attendant was, at the time of the occurrence above described, and at the time of committing said acts, and at all times mentioned herein, an agent and employee of Rubin & Cherry Exposition Inc., and was at all times mentioned herein acting within the scope of his employment as such agent and employee of Rubin & Cherry Exposition Inc., and was at all times mentioned herein acting in the prosecution of the business of his employer, the defendant herein, Rubin & Cherry Exposition Inc., and was at all times mentioned herein acting under the supervision and direction of the defendant herein, Rubin & Cherry Exposition Inc.'"

The paragraph was subject to the special demurrer interposed, because its allegations failed to show what kind of services the employee was hired to perform for his employer, or what work he actually did for his employer, under his contract of employment. *Cedartown Cotton Co.* v. *Miles,* 2 *Ga. App.* 79, 81 (58 S. E. 289). However, the error in overruling the demurrer was not harmful to the defendant, for the following reason: On the same day that the demurrer was overruled the plaintiff filed another amendment to the original petition which was allowed without objection thereto. That amendment was as follows: "Plaintiff amends paragraph 9 of the original petition by adding to said paragraph at the conclusion thereof the following: 'Plaintiff further alleges that the said attendant was placed at said point by the defendant herein and alleges that the attendant's duty was to see to it that visitors to said show sat in said chair, and pull said lever which catapulted the visitors down said chute.'" This second amendment gave substantially the information called for by the special demurrer to the first amendment, and the fact that it was set forth in an amendment to a paragraph of the petition other than the one attacked by the special demurrer was immaterial. The petition as amended gave sustantially the information called for by the special demurrer, and the petition after its amendment was not attacked by demurrer either general or special.

■ A verdict in favor of the plaintiff for $675 was returned, and subsequently the defendant's motion for new trial was over-

ruled. The undisputed evidence showed that Lila Bray was slapped, violently and unlawfully, on her face, and otherwise roughly handled by one Richard A. Jones alias Claude Edward Gay, under the circumstances set forth in the petition; and the first question is, was said Jones the servant and employee of the defendant, and if so, was he acting within the scope of and in furtherance of his employment when he committed the assault and battery on the girl? The evidence as to whether Jones was an employee of the defendant was in sharp conflict and would have authorized a finding either way, and the finding of the jury that he was such an employee was not contrary to the evidence. The evidence further authorized a finding that said employee at the time of the assault and battery was acting within the scope of his employment and in furtherance thereof. In *Gomez* v. *Great Atl. & Pac. Tea Co.*, 48 *Ga. App.* 398, 400 (172 S. E. 750), this court said: "Except in plain and palpable cases, it is for the jury to decide whether the servant was acting within the scope of and in furtherance of his employment when he committed the tortious act in question." In *Great Atl. & Pac. Tea Co.* v. *Dowling*, 43 *Ga. App.* 549, 556 (159 S. E. 609), the court held: "Clearly the petition shows that the tortious acts of the manager 'arose out of and in connection with the business of the principal,' namely, the alleged stealing of the candy from the defendant company in the defendant company's store, and by no stretch of the imagination can we conclude from the pleadings that it was an individual matter on the part of the manager, who had no personal grievance whatever against the plaintiff. This being true, the question of 'whether the agent was acting within the scope of his employment when he committed a tortious act is a question of fact for the jury.' *Century Building Co.* v. *Lewkowitz*, 1 *Ga. App.* 636 (57 S. E. 1036). The court did not err in overruling the demurrer." In that case the court also affirmed the judgment for the plaintiff. In *Central of Ga. Ry. Co.* v. *Brown*, 113 *Ga.* 414, 416 (38 S. E. 989, 84 Am. St. R. 250), the court said: "Some of the courts seem at one time to have been inclined to hold that a master could not be held liable for the wilful torts of his servant, because, it was said, if the servant through anger or malice committed an assault upon a person, he ceased for the time being to occupy the position of servant, and acted independently; that, inasmuch as he was not authorized to

commit an assault, he did not represent the master in that act but acted as an individual, the master therefore being not liable either in case or in trespass. This argument has long since been exploded. The theory that one may be a servant one minute, and, the very next minute, get angry, commit an assault, and in that act be not a servant, was too refined a distinction."

The cases cited for the plaintiff in error are distinguished by their facts from the case at bar. In view of the foregoing decisions and the facts of the instant case, the finding that the employee, when he committed the assault and battery in question, was acting within the scope of and in furtherance of his employment was not contrary to the evidence and the law. The undisputed evidence shows that the girl was so violently slapped on her face and so roughly handled by the defendant's employee that the marks on her face were visible for a considerable time after the battery; that she was so excited and frightened that for several nights thereafter she could not sleep in a dark room but required that a light be kept therein; that her condition was such that she could not attend school for a day or two, and when she did return to school she was so nervous and frightened that it was necessary for some person to accompany her to allay her fears. Under the facts of the case she was certainly entitled to recover more than nominal damages, and we can not hold as a matter of law that the verdict for $675 was excessive. The various grounds of the motion for new trial, assigning errors of commission and of omission in the charge of the court, when considered in the light of the entire charge and the facts of the case, show no cause for another trial. All of the material allegations of the amended petition were substantially supported by the evidence, direct and circumstantial; and the refusal to grant a new trial was not error for any reason assigned.

*Judgment affirmed. MacIntyre and Guerry, JJ., concur.*